IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

West Palm Beach Division

Case No.

XIAOYUN CHEN, PEIXUAN WANG,
HEZHANG CHEN, YANG ZHAO,
DONGLIN GU, JIALIN HAN,
WEN SHEN, YI GAO, LIJUAN FAN,
DEXIONG HU, WEN ZHANG, XIUQING
WANG, TIANJUN LI, themselves, and
derivatively, as limited partners of, and on
behalf of, Royal Palm Town Center IV, LLLP,

      *Plaintiffs,*

v.

JOSEPH J. WALSH, SR. an individual; SOUTH
ATLANTIC REGIONAL CENTER, LLC,
a Florida limited liability company; ROYAL PALM
DEVELOPMENT I, LLC, a Florida limited liability
Company; UNITED STATES REGIONAL ECONOMIC
AUTHORITY, LLC, a Florida limited liability company;
USREDA HOLDINGS, LLC, a Florida limited liability
Company, JJW CONSULTANCY, LTD., a foreign company;
and CONNECT INSURANCE GROUP, INC., a Florida
Company;

      *Defendants,*

v.

ROYAL PALM TOWN CENTER IV, LLLP,

      *Nominal Defendant.*
_____/

## **COMPLAINT**

Plaintiffs, themselves, and in a derivative capacity, as limited partners of, and on behalf of,

Nominal Defendant Royal Palm Town Center IV, LLLP (the "Partnership"), hereby sue

Defendants, Joseph J. Walsh, Sr. ("Mr. Walsh"), an individual; South Atlantic Regional Center, LLC ("SARC"), a Florida limited liability company; Royal Palm Development I, LLC ("RPD" or "Job Creating Entity" or "JCE"), a Florida limited liability Company; United States Regional Economic Development Authority, LLC ("USREDA"), a Florida limited liability company, JJW Consultancy, LTD., a foreign company, and Connect Insurance Group, Inc., a Florida corporation, (collectively "Defendants"), and alleges:

## <u>INTRODUCTION</u>

1.      Joseph J. Walsh is the principal and founder of the SARC, a regional center approved by the United States Citizenship and Immigration Services ("USCIS") through which he purported to run investment programs, including the Royal Palm Town Center project described herein (the "Project"), as a vehicle for foreign nationals to become U.S. legal permanent residents through the federal EB-5 program.

2.      Mr. Walsh induced Plaintiffs to each invest $500,000 in the Partnership in exchange for a limited partner position in the Partnership, (plus administrative and legal fees for legal immigrations services to be provided by Mr. Walsh's company, JJW Consultancy, Ltd.). The Partnership would then loan the funds to a Job Creating Entity, which in conjunction with funds of other EB-5 investors,[1] would fund the purchase, construction, renovation, and leasing of sixty commercial condominium units within the Royal Palm Town Center Plaza, and such loan would be secured with a mortgage on the units.  The commercial units would be leased to a single commercial tenant, Connect Insurance Group, Inc. ("CIG"), which was purportedly relocating from Texas to Florida, under a ten-year lease agreement that had already been secured. Under the lease agreement, CIG was required to complete the capital build-out of the commercial units in

---

[1] The securities offering was made available to up to 50 individual investors.

lieu of making lease payments for the first six months, and was thereafter responsible for annual lease payments of over $1,000,000.

3.      Mr. Walsh promised Plaintiffs that the foregoing business model would create the requisite number of direct and indirect jobs for Plaintiffs to meet the conditions of the EB-5 program. Mr. Walsh also promised that Plaintiffs' funds would be held in escrow until the earlier of the approval of each investors' I-526 petition (allowing them conditional permanent residency) by USCIS or receipt of 100% of the offering.

4.      Through its affiliated entities, Mr. Walsh received Plaintiffs' cash investments into the Partnership, and thereafter transferred the cash to the Job Creating Entity, RPD and caused RPD to purchase sixty commercial units.[2]  However, Mr. Walsh failed to properly document the loan from the Partnership to RPD and failed to secure the loan with a mortgage on the commercial units as promised.

5.      In addition, RPD failed to make any loan payments to the Partnership, and instead made known transfers of over $9 million *to* CIG between June 2012 and August 2013.

6.      Though CIG ultimately made some payments through November 2016, CIG never completed the requisite capital build-out of the commercial units, terminated the lease agreement, and vacated the premises. Thereafter, Mr. Walsh failed to complete the requisite improvements to the units in order that they be marketable to other commercial tenants, failed to secure sufficient tenants to fill the vacant commercial units and otherwise contributed to waste of the corporate assets.

---

[2] The securities offering document states that sixty-two commercial units would be purchased, but ultimately only sixty commercial units were purchased.

7.     Further, and in addition to the foregoing unauthorized transfer of RPD funds to CIG and others, Mr. Walsh secreted at least $8.5 million of the Plaintiffs' funds by obtaining two mortgages secured by the sixty commercial units, a fact he concealed from Plaintiffs and other Project investors.

8.     Because the commercial units remain largely vacant and unimproved, Plaintiffs' I-829 petitions were denied for failure to establish job creation as required.

9.     By the foregoing misconduct, Mr. Walsh stole Plaintiffs' money, breached his fiduciary duties, and committed fraud.

## PARTIES

### Plaintiffs

10.    Xiaoyun Chen is a citizen of the People's Republic of China and resides in California. Xiaoyun Chen is over 18 years of age and is otherwise *sui juris*.

11.    Peixuan Wang is a citizen of the People's Republic of China and resides in California. Peixuan Wang is over 18 years of age and is otherwise *sui juris*.

12.    Hezhang Chen is a citizen of the People's Republic of China and resides in California. Hezhang Chen is over 18 years of age and is otherwise *sui juris*.

13.    Yang Zhao is a citizen of the People's Republic of China and resides in California. Yang Zhao is over 18 years of age and is otherwise *sui juris*.

14.    Donglin Gu is a citizen of the People's Republic of China and resides in California. Donglin Gu is over 18 years of age and is otherwise *sui juris*.

15.    Jialin Han is a citizen of the People's Republic of China and resides in Massachusettes. Jialin Han is over 18 years of age and is otherwise *sui juris*.

16.     Wen Shen is a citizen of the People's Republic of China and resides in California. Wen Shen is over 18 years of age and is otherwise *sui juris*.

17.     Yi Gao is a citizen of the People's Republic of China and resides in Florida. Yi Gao is over 18 years of age and is otherwise *sui juris*.

18.     Lijuan Fan is a citizen of the People's Republic of China and resides in New Jersey. Lijuan Fan is over 18 years of age and is otherwise *sui juris*.

19.     Dexiong Hu is a citizen of the People's Republic of China and resides in California. Dexiong Hu is over 18 years of age and is otherwise *sui juris*.

20.     Wen Zhang is a citizen of the People's Republic of China and resides in California. Wen Zhang is over 18 years of age and is otherwise *sui juris*.

21.     Xiuqing Wang is a citizen of the People's Republic of China and resides in North Carolina.  Xiuqing Wang is over 18 years of age and is otherwise *sui juris*.

22.     Tianjun Li is a citizen of the People's Republic of China and resides in Washington. Tianjun Li is over 18 years of age and is otherwise *sui juris*.

### Defendants

23.     Joseph J. Walsh, Sr. is an individual over the age of 18.

24.     Nominal Defendant Royal Palm Town Center IV, LLLP (the "Partnership") is a Florida limited liability limited partnership with its principal place of business in Palm Beach, Florida. The Partnership is the new commercial enterprise which Mr. Walsh used as a vehicle for EB-5 fraud. Plaintiffs were each induced to invest $500,000 in the Partnership in exchange for (i) an interest in the entity, and (ii) an EB-5 visa.  Its general partner is Mr. Walsh (notwithstanding that the investment solicitation documents state that SARC would be the general partner) and its limited partners are each of the Plaintiffs and other non-party foreign investors.

25.     Defendant Royal Palm Development I, LLC is a Florida limited liability company with its principal place of business in Palm Beach, Florida. Royal Palm Development I, LLC's sole member is USREDA Holdings LLC,[3] and its authorized member is Joseph J. Walsh, Sr.

26.     Defendant South Atlantic Regional Center, LLC is a Florida limited liability company with its principal place of business in Palm Beach, Florida. South Atlantic Regional Center, LLC's sole member is USREDA Holdings LLC.

27.     Defendant United States Regional Economic Authority, LLC ("USREDA") is a Delaware limited liability company with a principal place of business in Palm Beach, Florida. USREDA's sole manager is USREDA Holdings LLC.

28.     Defendant USREDA Holdings LLC is a Delaware limited liability company with a principal place of business in Palm Beach, Florida. The sole managing member of USREDA Holdings LLC is Mr. Walsh.

29.     Defendant JJW Consultancy, LTD is a foreign corporation organized under the laws of Hong Kong.  At all material times, JJW Consultancy purported to provide administrative and legal services to Plaintiffs in connection with their EB-5 visa process.  Through JJW Consultancy, Mr. Walsh made false misrepresentation to Plaintiffs concerning the Project, the status of and progress of the Project inducing Plaintiffs to commence and continue their investments in the Project in Florida.  In addition, JJW operated in conjunction with Mr. Walsh and the other Defendants in furtherance of a fraudulent scheme, device, or artifice in Florida.

30.     Defendant Connect Insurance Group, Inc. is a Florida corporation with a principal place of business in Palm Beach, Florida.

---

[3] USREDA Holdings LLC is a Delaware limited liability company. Its sole manager is Joseph J. Walsh, Sr.

## JURISDICTION AND VENUE

31.     This Court has subject matter jurisdiction over this action under the Racketeer Influenced and Corrupt Organizations Action, 18 U.S.C. §1962, and pursuant to 28 U.S.C. §1331 and Section 27 of the Securities Exchange Act, 15 U.S.C. §78 and the principles of ancillary or supplemental jurisdiction under Title 28, United States Code, Section 1367.

32.     This Court has personal jurisdiction over Defendants because they, themselves or through operation and control of certain entities, operated, conducted, engaged in and carried on a fraudulent business and scheme in the Southern District of Florida.

33.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391, 15 U.S.C. §78aa, and 18 U.S.C. § 1965 because the Defendants' wrongful acts described herein occurred in the Southern District of Florida, and the property that is the subject of this action is located in Palm Beach County, Florida.  Additionally, the Defendants are residents of, and/or transact business in, Palm Beach County, Florida.

## FACTUAL ALLEGATIONS

34.     All conditions precedent to this action have been performed, have occurred, or have been waived.[4]

### EB-5 Program

35.     USCIS administers the federal EB-5 Program, which provides an opportunity for a foreign national to obtain legal permanent residency in the United States by investing $500,000

---

[4] Plaintiff reserves the right to amend this Complaint to seek treble damages against the defendant for civil theft pursuant to Chapter 772, Florida Statutes once the requisite notice period has expired.

7

or $1,000,000 in a commercial enterprise that creates at least ten qualified full-time U.S. positions based on that investment.

36.     After approval of the I-526 petition, immigrant investors receive conditional permanent residence status for a period of 2-years. Before the filing of Form I-829, Petitioner by Entrepreneur to Remove Conditions on Permanent Resident Status, the Regional Center is required to invest the immigrant's capital contribution in a job creating commercial enterprise that creates at least ten qualified full-time U.S. positions.

37.     After an immigrant investor demonstrates to USCIS that his or her capital contribution was invested into a job-creating entity that produced at least ten qualified full-time jobs for U.S. workers based on the investment, the investor (and his or her immediate family) is granted U.S. lawful permanent residency, through the filing and approval of an I-829 petition.

### South Atlantic Regional Center

38.     Regional Centers are organizations designated by USCIS to promote economic growth in a particular geographic region.

39.     When a foreign national invests in an EB-5 project through a regional center, the job-creation requirement can be satisfied through a showing of indirect jobs created, rather than only direct jobs created.

40.     On May 27, 2010, Mr. Walsh applied for and received USCIS approval for the creation of the South Atlantic Regional Center located in Palm Beach, Florida.

41.     Since 2010, Mr. Walsh has promoted several EB-5 projects, including the Royal Palm Town Center, and several others.[5]

---

[5] One of the SARC projects is the Palm House Hotel project, which is the subject of a civil fraud complaint and now an enforcement action brought by the Securities and Exchange Commission.

**Walsh's Affiliated Entities**

42.     Mr. Walsh is the direct or indirect sole member of Defendants SARC, RPD, USREDA, USREDA Holdings LLC, and JJW Consultancy, LTD. (together, "Affiliated Entities").

43.     Mr. Walsh is an "alter ego" of the Affiliated Entities, and used the Affiliated Entities for his own personal benefit so as to blur the distinction between his business and personal affairs.

44.     Mr. Walsh used the various Affiliated Entities to mislead or defraud Plaintiffs and for the purpose of perpetrating a fraud upon Plaintiffs.

45.     The Affiliated Entities are mere instrumentalities of Mr. Walsh's fraud.

**Royal Palm Town Center Project**

46.     Beginning in 2010, Mr. Walsh began promoting the Royal Palm Town Center Project, through which foreign investors could participate in a job-creation venture through real estate acquisition.

47.     By way of a securities sales contract, investors would invest $500,000 into the Partnership in exchange for one partnership share and pay an additional $50,000-$60,000 in administrative and legal fees.

48.     The securities offering was made to a total of 52 potential investors for a total capital raise of $26,000,000.

49.     The funds invested into the Partnership would be loaned to the Job Creating Entity for the purchase of sixty-two commercial condominium units within the Royal Palm Business Plaza located at 9200 Belvedere Rd, West Palm Beach, FL 33411 (the "Property"), and such loan would be secured by a mortgage on the Property.

50.     The Property would then be renovated, improved, and leased to a commercial single commercial tenant. Job creation would be measured by the economic impact of the leased space.

51.     Defendants made the following material representations to Plaintiffs concerning the legitimacy of the Project, calculated to induce Plaintiff investors to select the Project for their investment:

a.  That the General Partner of the Partnership would be a USCIS-approved regional center, SARC, not Mr. Walsh, personally.

b.  That the Pugliese Company was the developer of the Royal Palm Town Center buildings, to lend an air of legitimacy to the project, leading investors to believe that the Pugliese Company was somehow affiliated with the project.

c.  That Plaintiff investors would be investing in the fourth phase of an ongoing development project led by multi-millionaire Mr. Pugliese.

d.  That the third phase of the Royal Palm development project was the development and sale of the offices of the United States Citizenship and Immigration Services.

e.  That the Pugliese Company had already invested $8,000,000 of its own money into the project.

52.     The foregoing representations are false.

a.  At all times, the General Partner of the Partnership was actually Mr. Walsh.

b.  The Pugliese Company was not affiliated with the Project in any way.

c.  The Project was not a fourth phase of a development project led by Mr. Pugliese.

d.  The Project, other than being in close proximity to the offices of USCIS, had no affiliation or endorsement from USCIS.

    e.   That the Pugliese Company had not invested any money, much less $8,000,000 of into the Project.

53.    Defendants made the following material representations to Plaintiff investors as to the viability of the Project and the protection of their investment calculated to induce Plaintiff investors to select the Project for their investment:

    a.   That the investment would be secured by a "first rank mortgage on the high value building" worth $36.2 million, a "first rank mortgage on the leasing income of the property" worth $9.6 million, and that the building would be purchased by the tenant CIG after 5 years.

    b.   That the building is 100% free of debt.

    c.   That the building had already been completed.

    d.   That the property had already been leased for 10 years.

    e.   That the project is a completed project, with all exterior finishes, roads, landscaping, electrical and plumbing finished, the interior build-out would be done by new tenant.

    f.   That EB-5 jobs are guaranteed.

    g.   That the Project is in a premier location adjacent to the "New USCIS Immigration Services Offices for the Palm Beaches."

    h.   That the office space had already been fully-leased pursuant to a ten-year lease with CIG

    i.   That the building was already completed with $8,000,000 already invested by Pugliese.

j.  That the 52 units could be purchased for $26,000,000 and that after renovations (which would be completed by the tenant), the building would be worth $36,235,000.

54. The foregoing representations are false.

a.  The Plaintiffs' investments were not secured by a mortgage or any loan documents.

b.  CIG did not purchase the property for $4 million above the $26 million investment. In fact, CIG failed to make capital improvements to the commercial units it was leasing, actually terminated the lease prematurely, and was the beneficiary of over $9 million in unauthorized transfers from RPD.

c.  Several mortgages were obtained which encumbered the property to the tune of $12.5 million.

d.  The commercial units were not completed, but rather required capital build-outs before ready for occupancy by any tenant.

e.  The property had not been leased for ten years. In fact, the purported ten-year lease with CIG dated January 2010 when RPD did not actually acquire all sixty commercial units until May 2012.

f.  CIG did not purchase the property at the end of the lease, but in fact, terminated the lease prematurely, without completing the requisite capital build-out and having received unauthorized transfers of over $9 million in cash from RPD.

g.  The requisite number of EB-5 jobs were not created as the commercial units were not occupied by a bona fide tenant and as a result, Plaintiffs' I-829 petitions have been denied.

h.  The building is not fully renovated and is not worth $36,235,000.

55.     In addition, the marketing materials bear the name USREDA, one of Mr. Walsh's companies, which stands for United States Regional Economic Development Authority.  This name was reasonably calculated to convey the false impression that the business had some connection with, or endorsement, authorization, or approval from, the Government of the United States, or any agency thereof, and for the purpose of inducing Plaintiff investors to each transfer over $500,000.00 to Royal Palm Town Center IV, LLLP.  *See* 18 U.S.C.A. § 709 *and United States v. U.S.I.A. Homes, Inc.*, 409 F. Supp. 483, 486 (E.D.N.Y. 1976); 18 U.S.C.A. § 506; *and United States v. Baby-Tenda Corp.*, 2007 WL 2434057, at *2 (W.D. Mo. Aug. 22, 2007); 18 U.S.C.A. § 1341.

56.     Based upon the misrepresentations and without knowledge as to the falsity of the misrepresentations, Plaintiffs each entered into a securities sales contract with the Partnership, and received a limited partner share in exchange for $500,000.

57.     Plaintiffs made transfers to one or more of Mr. Walsh's Affiliated Entities in connection with the Project between 2011 and 2016.

58.     The Plaintiffs submitted their I-526 petitions for conditional permanent residency, which required a showing of the viability of the Project. Plaintiffs' I-526 petitions were approved.

59.     Following approval of their I-526 applications, Plaintiffs resided in the United States.

60.     However, by the time Plaintiffs submitted their I-829 petitions, only proof for 50 jobs had been provided by Mr. Walsh.

61.     As a result, Plaintiffs' I-829 petitions were denied, for lack of job creation.

62.     It was not until Plaintiffs' I-829 applications were denied, the first denial being in January 2018, that Plaintiffs discovered the fraud perpetrated by Mr. Walsh and his entities.

63.    Following the denial of their I-829 applications in 2018, upon further investigation, and the hiring of separate immigration counsel, Plaintiffs learned that Mr. Walsh and the Affiliated Entities had concealed from Plaintiffs that:

   a.  CIG, the single commercial tenant from which the jobs were supposed to be created, did not renovate or make improvements to the commercial units as agreed, cancelled the lease in 2016, and was the beneficiary of over $9 million in unauthorized transfers from RPD;

   b.  RPD failed to make any loan payments to the Partnership, failed to record the loan with a mortgage on the commercial units, and otherwise failed to protect Plaintiffs' investments;

   c.  RPD failed to make any payments to the Partnership, but rather made unauthorized transfers to others, including over $9 million to CIG.

   d.  Mr. Walsh had encumbered the commercial units by obtaining a mortgage in the amount of $3.3 million on September 3, 2013, a mortgage in the amount $4 million on January 30, 2014, and a mortgage in the amount of $8.8 million on September 29, 2015.

## CLAIMS FOR RELIEF

### COUNT I
### Fraudulent Misrepresentation against Mr. Walsh

64.    Plaintiffs hereby re-assert the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

65.    Mr. Walsh made false statements of material fact, including without limitation representing to Plaintiffs that he had secured a tenant to renovate, improve, and lease the Property

14

for ten years, and that investment in the Project would result in a return on their investment and approval of their EB-5 visas.

66.     Mr. Walsh knew that the statements were false because he intended to take Plaintiffs' money for himself.

67.     Mr. Walsh made these materially false statements to induce each Plaintiff to: (i) invest $500,000 in the Partnership; (ii) pay $60,000 in administrative fees; and (iii) engage the legal services of Mr. Walsh's Affiliated Entities in connection with their EB-5 visa applications.

68.     Each Plaintiff relied and acted upon the foregoing false statements by: (i) investing $500,000 in the Partnership; (ii) paying $60,000 in administrative fees; and (iii) engaging the legal services of Mr. Walsh's Affiliated Entities in connection with their EB-5 visa applications.

69.     Plaintiffs acted with justifiable reliance on Mr. Walsh's false statements.

70.     As a direct and proximate result of Mr. Walsh's false statements, Plaintiffs sustained damages.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants for compensatory damages and/or restitution, interest, costs, and for such other relief as this Court deems appropriate and just.

**COUNT II**
**Fraudulent Concealment against Mr. Walsh**

71.     Plaintiffs hereby re-assert the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

72.     Mr. Walsh concealed from Plaintiffs his plans to take their money for himself.

73.     Mr. Walsh knew or should have known that these material facts should be disclosed or not concealed.

74.     Mr. Walsh acted in bad faith by failing to disclose or concealing the material facts.

75.     Mr. Walsh knew that he was taking Plaintiffs' money for himself.

76.     Each Plaintiff relied and acted upon the foregoing omissions by: (i) investing $500,000 in the Partnership; (ii) paying $60,000 in administrative fees; and (iii) engaging the legal services of Mr. Walsh's Affiliated Entities in connection with their EB-5 visa applications.

77.     Mr. Walsh had a duty to speak to Plaintiffs: (i) to prevent his words from misleading Plaintiffs; (ii) because Mr. Walsh had special knowledge of material facts; and/or (iii) because Mr. Walsh had a fiduciary relation to Plaintiffs.

78.     As a direct and proximate result of Mr. Walsh's above concealments and/or failure to disclose, Plaintiffs sustained damages.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants for compensatory damages and/or restitution, interest, costs, and for such other relief as this Court deems appropriate and just.

## COUNT III
## Fraudulent Inducement against Mr. Walsh

79.     Plaintiffs hereby re-assert the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

80.     Mr. Walsh made false statements of material fact to the Plaintiffs, including but not limited to that he had secured a tenant to renovate, improve, and lease the Property for ten years, and that investment in the Project would result in a return on their investment and approval of their EB-5 visas.

81.     Mr. Walsh knew that the statements were false and that he intended to keep Plaintiffs' money for himself.

82.     Mr. Walsh made these materially false statements to induce each Plaintiff to: (i) invest $500,000 in the Partnership; (ii) pay $60,000 in administrative fees; and (ii) engage the legal services of Mr. Walsh's Affiliated Entities in connection with their EB-5 visa applications.

83.     Each Plaintiff relied and acted upon the foregoing false statements by: (i) investing $500,000 in the Partnership; (ii) paying $60,000 in administrative fees; and (iii) engaging the legal services of Mr. Walsh's Affiliated Entities in connection with their EB-5 visa applications.

84.     Plaintiffs acted with justifiable reliance on Mr. Walsh's false statements.

85.     As a direct and proximate result of Mr. Walsh's false statements, Plaintiffs sustained damages.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants for compensatory damages and/or restitution, interest, costs, and for such other relief as this Court deems appropriate and just.

## COUNT IV
### Negligent Misrepresentation against Mr. Walsh

86.     Plaintiffs hereby re-assert the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

87.     Mr. Walsh made misrepresentations of material fact by representing to Plaintiffs that he had secured a tenant to renovate, improve, and lease the Property for ten years, and that investment in the Project would result in a return on their investment and approval of their EB-5 visas

88.     Mr. Walsh knew of the falsity of the misrepresentations, made the misrepresentations without knowledge of their truth or falsity, or should have known the representations were false.

89.     Mr. Walsh made the misrepresentations to induce each Plaintiff to: (i) invest $500,000 in the Partnership; (ii) pay $60,000 in administrative fees; and (iii) engage the legal services of Mr. Walsh's Affiliated Entities in connection with their EB-5 visa applications.

90.     Each Plaintiff acted upon the foregoing misrepresentations by: (i) investing $500,000 in the Partnership; (ii) paying $60,000 in administrative fees; and (iii) engaging the legal services of Mr. Walsh's Affiliated Entities in connection with their EB-5 visa applications.

91.     Plaintiffs acted with justifiable reliance on Mr. Walsh's misrepresentations.

92.     As a direct and proximate result of Mr. Walsh's misrepresentations, Plaintiffs sustained damages.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants for compensatory damages and/or restitution, interest, costs, and for such other relief as this Court deems appropriate and just.

## COUNT V
### Conversion against Mr. Walsh

93.     Plaintiffs hereby re-assert the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

94.     Mr. Walsh and Plaintiffs agreed that Mr. Walsh would invest Plaintiffs' cash and protect Plaintiffs' investments by dealing in good faith.

95.     Mr. Walsh, however, using a web of affiliated entities, took Plaintiffs' assets for himself, including cash and loan proceeds.

96.     Mr. Walsh wrongfully deprived Plaintiffs of ownership of its cash and loan proceeds.

18

97.     Plaintiffs have demanded the return of their cash and assets, but Mr. Walsh has refused to return them, so further demand would be futile.

98.     As a direct and proximate result of Mr. Walsh's conduct, Plaintiffs has suffered damages.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants for compensatory damages and/or restitution, interest, costs, and for such other relief as this Court deems appropriate and just.

### COUNT VI
### Theft Under Section 812.014, Florida Statutes against Mr. Walsh

99.     Plaintiffs hereby re-assert the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.[6]

100.     Plaintiffs invested over $6.5 million in the Partnership.

101.     Mr. Walsh, however, using a web of affiliated entities, took Plaintiffs' property, including cash and loan proceeds, for himself.

102.     Mr. Walsh knowingly obtained and used Plaintiffs' property with the intent to deprive Plaintiffs of their right to the property and/or the benefit from the property in violation of Section 812.014, Florida Statutes.

103.     And, Mr. Walsh has appropriated Plaintiffs' property to his own use, in violation of Section 812.014, Florida Statutes.

104.     By the foregoing conduct, Plaintiffs have been deprived of the right to and benefit from their property.

---

[6] Plaintiffs reserve the right to amend the Complaint to seek treble damages after thirty days have passed following service of their civil theft demand letter pursuant to Section 772.11, Florida Statutes.

WHEREFORE, Plaintiffs, pursuant to Section 772.11, Florida Statutes, demands judgment against Mr. Walsh for compensatory damages, threefold the actual damages sustained, reasonable attorneys' fees and costs, interest, and for such other relief as this Court deems appropriate and just.

## COUNT VII
### Injunctive Relief Under Section 812.035, Florida Statutes against Mr. Walsh

105.   Plaintiffs hereby re-assert the allegations set forth in paragraphs 1 through 63 and 96 through 101 above as if fully set forth herein.

106.   Plaintiffs invested over $6.5 million in the Partnership.

107.   Mr. Walsh, however, using a web of affiliated entities, took Plaintiffs' assets for himself, including cash and loan proceeds.

108.   Mr. Walsh knowingly obtained and used Plaintiffs' property with the intent to deprive Plaintiffs of their right to the property and/or the benefit from the property in violation of Section 812.014, Florida Statutes.

109.   And, Mr. Walsh has appropriated Plaintiffs' property to his own use, in violation of Section 812.014, Florida Statutes.

110.   By the foregoing conduct, Plaintiffs have been deprived of the right to and benefit from their property.

111.   In the absence of immediate injunctive relief, Plaintiffs' property is at risk of significant loss and Plaintiffs will suffer irreparable damage and harm.

112.   Immediate injunctive relief will serve the public interest because such relief will enforce the lawful property rights of Plaintiffs and restrain Mr. Walsh from engaging in further unlawful conduct and from further benefitting from his unlawful conduct.

WHEREFORE, Plaintiffs, pursuant to Sections 772.11 and 812.035, Florida Statutes, respectfully request the Court enter a preliminary and permanent injunction:

    a.   Enjoining Mr. Walsh from taking action on behalf of the Partnership, and from directly or indirectly disposing of, secreting, or otherwise encumbering the property of and derived from the Partnership;

    b.   Ordering Mr. Walsh to divest himself of any interest, to the extent he claims interest, in the Partnership;

    c.   Imposing reasonable restrictions upon the future activities or investments of Mr. Walsh, including, but not limited to, prohibiting Mr. Walsh from engaging in the same type of endeavor as the enterprise in which he was engaged in violation of the provisions of Section 812.014, Florida Statutes; and

award Plaintiffs' their reasonable attorneys' fees and costs, interest, and for such other relief as this Court deems appropriate and just.

## COUNT VII
## Violation of RICO Act, 18 U.S.C. §1962(c) against all Defendants

113.    Plaintiffs hereby re-assert the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

114.    Mr. Walsh, SARC, RPD, USREDA, USREDA Holdings LLC, JJW Consultancy, LTD, and CIG (together, "Defendants") engaged in separate, independent racketeering activity to the detriment of Plaintiffs.

115.    Defendants were employed by and associated with an illegal enterprise, and conducted and participated in that enterprise's affairs, through a pattern of racketeering activity consisting of numerous and repeated uses of the interstate mails and wire communications to

execute a scheme to defraud (the "RICO Enterprise"), all in violation of the Racketeer Influenced and Corrupt Organizations Act (the "RICO Act"), 18 U.S.C. §1962(c).

116.    The RICO Enterprise, which engaged in, and the activities of which affected, interstate and foreign commerce, was comprised of an association in fact of entities and individuals that included the Defendants.

117.    The members of the RICO Enterprise had a common purpose: to increase and maximize their profits by illegally diverting funds that they knew belonged to Plaintiffs for improper and unauthorized purposes. The Defendants shared the bounty of their enterprise by sharing the illegal profits generated by the joint scheme.

118.    The RICO Enterprise is an ongoing organization, which acts through the coordinated nature of Defendants' activity and functions as a continuing unit. Specifically, Defendants conducted and participated in the affairs of this RICO Enterprise through a pattern of racketeering activity that projects into the future, has lasted over one year, and consists of numerous and repeated violations of federal mail and wire fraud statutes.

119.    The Defendants directed and controlled the RICO Enterprise's affairs by:

   a.   Using Plaintiffs' funds for purposes not related to the Royal Palm Project;

   b.   Engaging in a systematic scheme to loot, transfer and secret Plaintiffs' funds and other assets of the Partnership;

   c.   Repeatedly misleading and providing false assurances to Plaintiffs as to the status of the Project while their funds and other assets of the Partnership were being stolen and dissipated in order to avoid Plaintiffs' interfering with Defendants' scheme.

120.     The Defendants used the mails and wires in furtherance of the scheme to defraud and in committing the foregoing misconduct. The Defendants provided materials to investors using the mails and wired investor funds among various accounts located in the United States.

121.     As described herein, as part of and in furtherance of the scheme to defraud, the Defendants made material omissions and misrepresentations to Plaintiffs with the intent to deceive them.

122.     For the purpose of executing the scheme to defraud, the Defendants sent, mailed, and transmitted, or caused to be sent, mailed or transmitted, in interstate or foreign commerce investment materials and numerous wire transfers misappropriating Plaintiffs' funds.

123.     Most of the Defendants' wrongful conduct occurred in the United States.

124.     The proceeds from the RICO Enterprise included $500,000 of principal investment and $60,000 in administrative and legal fees paid by each Plaintiff.

125.     Because the scheme was not disclosed, Plaintiffs could take no action to avoid the misuse and embezzlement of their funds.

126.     As a result of the Defendants' conduct and participation in the racketeering activity alleged herein, Plaintiffs suffered damages in the form of the loss of their investments.

127.     Plaintiffs suffered a domestic injury as they were residing in the United States at all material times.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants for compensatory damages, treble damages, attorneys' fees, interest, costs, order the dissolution of the enterprise, and grant such other relief as this Court deems appropriate and just.

**COUNT VIII**
**Violation of RICO Act, 18 U.S.C. §1962(d) against all Defendants**

128.    Plaintiffs hereby re-assert the allegations set forth in paragraphs 1 through 63 and 110 through 124 above as if fully set forth herein.

129.    At all times material hereto, Defendants were associated with the RICO Enterprise and agreed and conspired to violate 18 U.S.C. §1962(c).

130.    Defendants agreed to conduct and participate, directly and indirectly, in the conduct and affairs of the RICO Enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. §1962(d).

131.    Defendants committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect the objects thereof, including but not limited to the acts set forth above.

132.    As a result of the Defendants' violations of 18 U.S.C. §1962(d), Plaintiffs suffered damages in the form of loss of their investments.

133.    Plaintiffs suffered a domestic injury as they were residing in the United States at all material times.

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants for compensatory damages, treble damages, attorneys' fees, interest, costs, order the dissolution of the enterprise, and grant such other relief as this Court deems appropriate and just.

**COUNT IX**
**Declaratory Relief Under Section 620.1602, Florida Statutes against Mr. Walsh**

134.    Plaintiffs hereby re-assert the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

135.    This is a Count for Declaratory Relief seeking expulsion of Mr. Walsh as a general

partner from the Partnership, pursuant to Section 620.1603, Florida Statutes, which provides:

> A person is dissociated from a limited partnership as a
> general partner upon the occurrence of any of the following
> events:
>
> …
>
> (5) On application by the limited partnership, the person's
> expulsion as a general partner by judicial determination
> because:
>
> (a) The person engaged in wrongful conduct that adversely
>     and materially affected the limited partnership activities;
>
> (b) any person claiming to be interested or who may be in
>     doubt about his or her rights under a deed, will, contract
>     or other article, memorandum or instrument in writing . . .
>     may have determined any question of construction or
>     validity ... and obtain a declaration of rights, status, or
>     other equitable or legal relations thereunder."

136.    Mr. Walsh's conduct has created doubt and uncertainty as to the Plaintiffs' rights,

and an actual controversy has arisen and now exists regarding whether Plaintiffs are entitled to

expel Mr. Walsh as general partner of the Partnership in consideration of his wrongful conduct

concerning the Project.

137.    Plaintiffs desire a judicial determination that:

a.  Mr. Walsh is no longer the general partner of the Partnership;

b.  Any books, records, documents and information pertaining to the Partnership,

    including corporate and financial records, in the actual or constructive possession

    or control of Mr. Walsh and/or his Affiliated Entities in connection with the Project

    must be immediately turned over to Plaintiffs;

c.  Mr. Walsh may no longer act on behalf of the Partnership.

138.    Plaintiffs are in an actual, practical and present need for judicial declarations because Mr. Walsh continues to act on behalf of the Partnership in ways that materially and adversely affect the Partnership's interests.

139.    The declarations sought herein deal with a present ascertained or ascertainable state of facts or present controversy as to a state of facts.

140.    The privileges or rights of Plaintiffs are dependent upon the facts or the law applicable to the facts.

141.    Plaintiffs have an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law.

142.    Plaintiffs' antagonistic and adverse interests are all before the Court by proper process and the relief cited is not the giving of legal advice by the Court or the answers to questions propounded from curiosity.

143.    Plaintiffs request, pursuant to Section 86.111, Florida Statutes, that the Court advance this matter on the calendar.

WHEREFORE, Plaintiffs respectfully request this Court:

a.   Declare Mr. Walsh is no longer the general partner of the Partnership;

b.   Declare any books, records, documents and information pertaining to the Partnership, including corporate and financial records, in the actual or constructive possession or control of Mr. Walsh and/or his Affiliated Entities in connection with the Project must be immediately turned over to Plaintiffs;

c.   Declare Mr. Walsh may no longer act on behalf of the Partnership; and

d.   Grant such further relief as the Court deems appropriate and just.

26

## COUNT IX
### Breach of Fiduciary Duty against Mr. Walsh

144.    Plaintiffs hereby re-assert the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

145.    At all times material hereto, Mr. Walsh was the general partner and manager of the Partnership.

146.    As general partner of the Partnership, Mr. Walsh owed the Partnership a duty of loyalty to: (i) hold as trustee for the Partnership any property, profit, or benefit derived from the Partnership's activities; (ii) to refrain from dealing as a party having an interest adverse to the Partnership.

147.    Pursuant to that duty, Mr. Walsh was obligated to refrain from directly or indirectly taking the Partnership's funds and other assets for himself and/or his Affiliated Entities.

148.    As general partner, Mr. Walsh owed the Partnership a duty of care to refrain from engaging in grossly negligent, reckless conduct, intentional misconduct, or a knowing violation of law.

149.    The following actions or omissions of the Partnership constitute "selling, leasing, exchanging, or otherwise disposing of all, or substantially all, of the limited partnership's property…other than in the usual and regular course of the limited partnership's activities," under Section 620.1406(1)(i), Florida Statutes, and as such, required the approval of the limited partners owning a majority of the rights to receive distributions as limited partners pursuant to Section 620.1406(5), which approval was not solicited nor given:

   a.   Electing not to record the mortgage held by the Partnership against the Property.

   b.   Obtaining a mortgage on the Property in the amount of $3.3 million on September 3, 2013;

    c.   Obtaining a mortgage on the Property in the amount $4 million on January 30, 2014; and

    d.   Obtaining a mortgage on the Property in the amount of $8.8 million on September 29, 2015.

150.    Mr. Walsh breached his fiduciary duties to Plaintiffs by taking the Partnership's funds and other assets for himself and/or his Affiliated Entities, and otherwise committing fraud.

151.    As a direct and proximate result of Mr. Walsh's breaches of his duties of loyalty and care, the Partnership has suffered loss and damages.

152.    A demand that the Partnership assert this action against Defendants would be futile because the Defendant Walsh is the general partner of the Partnership and is directly responsible for the misconduct alleged herein, and would likely decline to pursue legal action against, effectively, himself. Furthermore, such demand would provide Defendant Walsh with advance notice of legal action against him which would give him an opportunity to further secret the Partnership's assets that might otherwise be recoverable.

WHEREFORE, Plaintiffs, in a derivative capacity, as limited partners of, and on behalf of, Royal Palm Town Center IV, LLLP, request that this Court enter a judgment against Defendant Joseph J. Walsh, Sr. for compensatory damages and/or restitution, interest, and costs, and for such other relief as the Court deems appropriate and just.

**COUNT X**
**Derivative Claim on behalf of the Partnership for Breach of Fiduciary Duty**
**<u>against Mr. Walsh</u>**

153.    Plaintiffs hereby re-assert the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

28

154.   At all times material hereto, Mr. Walsh was the general partner and manager of the Partnership.

155.   As general partner of the Partnership, Mr. Walsh owed the Partnership a duty of loyalty to: (i) hold as trustee for the Partnership any property, profit, or benefit derived from the Partnership's activities; (ii) to refrain from dealing as a party having an interest adverse to the Partnership.

156.   Pursuant to that duty, Mr. Walsh was obligated to refrain from directly or indirectly taking the Partnership's funds and other assets for himself and/or his Affiliated Entities.

157.   As general partner, Mr. Walsh owed the Partnership a duty of care to refrain from engaging in grossly negligent, reckless conduct, intentional misconduct, or a knowing violation of law.

158.   Mr. Walsh breached his fiduciary duties to Plaintiffs by taking the Partnership's funds and other assets for himself and/or his Affiliated Entities, and otherwise committing fraud.

159.   As a direct and proximate result of Mr. Walsh's breaches of his duties of loyalty and care, the Partnership has suffered loss and damages.

160.   A demand that the Partnership assert this action against Defendants would be futile because the Defendant Walsh is the general partner of the Partnership and is directly responsible for the misconduct alleged herein, and would likely decline to pursue legal action against, effectively, himself. Furthermore, such demand would provide Defendant Walsh with advance notice of legal action against him which would give him an opportunity to further secret the Partnership's assets that might otherwise be recoverable.

WHEREFORE, Plaintiffs, in a derivative capacity, as limited partners of, and on behalf of, Royal Palm Town Center IV, LLLP, request that this Court enter a judgment against Defendant

Joseph J. Walsh, Sr. for compensatory damages and/or restitution, interest, and costs, and for such other relief as the Court deems appropriate and just.

## COUNT XI
## Corporate Waste against Mr. Walsh

161.    Plaintiffs hereby re-assert the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

162.    Mr. Walsh wasted assets of the Partnership by recklessly and wastefully expending Partnership funds as described in Paragraphs 47 through 56 above.

163.    As a direct and proximate result of Mr. Walsh's corporate waste, the Partnership has been damaged.

WHEREFORE, Plaintiffs, themselves and derivatively on behalf of Royal Palm Town Center IV, LLLP demand judgment against Mr. Walsh for damages, prejudgment interest, taxable costs, and injunctive relief, including without limitation the appointment of a receiver over the Project, and for such other relief as the Court deems appropriate and just.

## COUNT XII
## Equitable Accounting against Mr. Walsh and RPD

164.    Plaintiffs hereby re-assert the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

165.    Plaintiff investors each invested $500,000 into the Partnership, which in turn, should have loaned the funds to RPD for the purchase of commercial condominium units in the Royal Palm Plaza, and received in exchange a promissory note, and mortgage secured by the units.

166.    Mr. Walsh was the general partner for both the Partnership and RPD.

167.    The relationship between Plaintiffs, the Partnership and RPD involves extensive or complicated accounts.

168.     An accounting is necessary to determine the financial condition and transactions of the Partnership and RPD.

WHEREFORE, Plaintiffs demand judgment against Defendants for an accounting, and for such other relief as the Court deems to be appropriate and just.

## COUNT XIII
### Violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5
### against all Defendants

169.     Plaintiffs hereby re-assert the allegations set forth in paragraphs 1 through 63 above as if fully set forth herein.

170.     Defendants, by the use of means and instrumentalities of interstate commerce (*i.e.*, mails and wire transfers), were primary participants in the following wrongful conduct and they each:

    a.     Employed devices, schemes, and artifices that was intended to and did defraud Plaintiffs;

    b.     Made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading;

    c.     Engaged in acts, practices and a course of business which operated as a fraud and deceit upon purchasers of the Partnership's limited partnership units,

in violation of Section 10(b) of the Securities Exchange Act (15 U.S.C. § 78j and 78t) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

171.     Plaintiff investors each invested $500,000 into the Partnership, which in turn, should have loaned the funds to RPD for the purchase of commercial condominium units in the Royal Palm Plaza, and received in exchange a promissory note, and mortgage secured by the commercial condominium units.

31

172.    As a result of the dissemination of materially false and misleading information and failure to disclose material facts, the Royal Palm Project appeared to be a legitimate investment opportunity for foreign investors seeking to participate in the EB-5 visa program.

173.    Plaintiffs, believing Defendants' misrepresentations to be true, relied on the misstatements and purchased securities in the Partnership.

174.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their purchase of limited partnership interests in the Partnership.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages, injunctive relief, interest, costs, attorneys' fees, and such other relief as the Court deems to be appropriate and just.

## CONCLUSION

WHEREFORE, Plaintiffs hereby demand judgment against Defendants for the total amount of damages resulting from Defendants wrongful conduct as set forth herein, and for such further relief as this Court deems to be appropriate and just.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a jury trial on all issues and claims so triable.

DATED this 20th day of September, 2018.

Respectfully Submitted,

DAMIAN & VALORI LLP
*Attorneys for Plaintiffs*
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965

By: */s/ Kenneth Dante Murena*
Kenneth Dante Murena, Esq.
Florida Bar No. 147486
kmurena@dvllp.com
Allison J. Leonard, Esq.
Florida Bar No. 87061
Aleonard@dvllp.com